260 P.3d 1135

**Amy M. LEE, Plaintiff–Appellant,**

**v.**

**UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL–CIO; State of Hawai'i, Department of Public Safety, Defendants–Appellees,**

**and**

**John Does 1 through 10; Jane Does 1 through 10; Doe Corporations 1 through 10; Doe Unincorporated Associations, Including Partnerships 1 through 10, Defendants.**

**No. 28413.**

Intermediate Court of Appeals of Hawai'i.

June 29, 2011.

As Corrected Aug. 4, 2011.

wrongful termination against the State. Lee filed her hybrid-action complaint in the Circuit Court of the First Circuit (Circuit Court) without first seeking relief before the Hawai'i Labor Relations Board (HLRB). The Circuit Court[1] dismissed Lee's complaint for lack of subject matter jurisdiction.

The principal issue raised in this appeal is whether the HLRB has exclusive original jurisdiction over Lee's hybrid action or shares concurrent jurisdiction with the circuit courts. We hold that the HLRB has exclusive original jurisdiction over Lee's hybrid action and thus the Circuit Court properly dismissed Lee's lawsuit for lack of jurisdiction. We also hold that the Circuit Court did not err in limiting its award of attorney's fees against UPW to one-half of the $1,480 in fees incurred by Lee in pursuing a default judgment against both UPW and the State.

R. Steven Geshell, on the briefs, for Plaintiff–Appellant.

Herbert R. Takahashi, Danny J. Vasconcellos, Rebecca L. Covert, on the briefs, for Defendant–Appellee United Public Workers, AFSCME, Local 646, AFL–CIO.

James E. Halvorson, Jeffrey A. Keating, Deputies Attorney General, on the briefs, for Defendant–Appellee State of Hawaii, Department of Public Safety.

NAKAMURA, Chief Judge, and FOLEY and FUJISE, JJ.

Opinion of the Court by NAKAMURA, C.J.

Plaintiff–Appellant Amy M. Lee (Lee), a public employee, filed suit against her employer, Defendant–Appellee State of Hawai'i, Department of Public Safety (DPS or State), and her union, Defendant–Appellee United Public Workers AFSCME, Local 646, AFL–CIO (UPW). Lee's complaint alleged a "hybrid action" against (1) the State for breaching the collective bargaining agreement by wrongfully terminating her and (2) UPW for breaching its duty of fair representation by "declining to pursue" her grievance for

## BACKGROUND

Lee was employed by the DPS as an adult correctional officer (ACO) at the Women's Community Correctional Center (WCCC) and was a member of UPW. In 2000, Lee sustained work-related injuries to her left shoulder and back. Lee underwent surgery for these injuries in 2002. As a result of Lee's injuries, Lee's treating physician certified that Lee was permanently unable to perform her usual and customary duties as an ACO. Lee chose to return to temporary light duty at WCCC and to participate in the State's Return to Work Priority Program, under which she would be subject to termination if a job search to place her in an alternative position was unsuccessful. In 2003, the State terminated Lee's employment after advising her that a search under the program for suitable state jobs had been unsuccessful.

In response to her termination, Lee requested that UPW pursue a grievance against the State pursuant to the collective bargaining agreement (CBA) between the State and UPW. In December 2003, UPW filed a grievance on Lee's behalf with the "Department Head" of the DPS. In May 2005, the Acting Director of the DPS submit-

1. The Honorable Bert I. Ayabe presided.

ted the DPS's decision denying the grievance. In August 2005, UPW notified Lee that based on its review of the matter, it had decided not to pursue her grievance any further. Under the applicable grievance procedures of the CBA, only UPW, and not the employee, had the authority to further pursue a grievance denied by the State by submitting the grievance to binding arbitration.

On February 9, 2006, Lee filed a civil complaint in the Circuit Court asserting a hybrid action against both the State and UPW. Lee alleged that the State was liable for breach of "contract" (presumably the CBA) and for breach of its duty of good faith and fair dealing. Lee alleged that UPW breached its duty of fair representation, its duty of good faith and fair dealing, and its contract with Lee to be the exclusive representative of Lee under the CBA by "declining to pursue" Lee's grievance regarding her termination against the State. Lee further alleged that "[t]he conduct of the Defendant was malicious[.]"

An entry of default was filed against UPW and the State for failure to answer the complaint. Lee then filed a motion for entry of default judgment against both UPW and the State. Subsequently, Lee stipulated with the State to set aside the State's default. The Circuit Court also granted UPW's motion to set aside UPW's default on the condition that UPW pay the necessary and reasonable fees and costs incurred by Lee in pursuing the motion for entry of default judgment as against UPW. The Circuit Court awarded Lee $6.14 in costs and $740 in attorney's fees, which was one-half of the attorney's fees sought by Lee, because "[Lee]'s request for entry of default judgment was also initially brought against the State."

The State and UPW filed motions to dismiss Lee's hybrid-action complaint for lack of subject matter jurisdiction. Both argued

that the Circuit Court lacked jurisdiction based on Hawaii Revised Statutes (HRS) § 89–14 (1993),[2] which grants the HLRB exclusive original jurisdiction over controversies concerning prohibited practices. They further argued that *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), which Lee relied upon as a basis for the Circuit Court's jurisdiction, was inapplicable to Lee's case.

The Circuit Court ruled that under HRS § 89–14, the HLRB had exclusive original jurisdiction over Lee's hybrid action and that *Vaca v. Sipes* was inapplicable to Lee's case. The Circuit Court granted UPW's and the State's respective motions to dismiss, and it entered a Judgment against Lee and in favor of UPW and the State. Lee appeals from this Judgment.

On appeal, Lee argues that the Circuit Court erred in 1) dismissing her hybrid action against UPW and the State for lack of jurisdiction; and 2) limiting the amount of attorney's fees it awarded to Lee in setting aside the default entered against UPW. We disagree and affirm the Circuit Court.

## DISCUSSION

### I.

██ Lee challenges the Circuit Court's dismissal of her hybrid action for lack of subject matter jurisdiction. "The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." *Captain Andy's Sailing, Inc. v. Dep't of Land and Natural Res.*, 113 Hawai'i 184, 192, 150 P.3d 833, 841 (2006) (citation and alteration omitted).

The central question presented in this appeal is whether the HLRB has exclusive original jurisdiction over the hybrid action brought by Lee, a State public-sector em-

2. Hawaii Revised Statutes (HRS) § 89–14 provides:

§ 89–14. **Prevention of prohibited practices.** Any controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377–9; provided that *the board shall have exclusive original jurisdiction over such a controversy* except that nothing

herein shall preclude (1) the institution of appropriate proceedings in circuit court pursuant to section 89–12(e) or (2) the judicial review of decisions or orders of the board in prohibited practice controversies in accordance with section 377–9 and chapter 91. All references in section 377–9 to "labor organization" shall include employee organization.
(Emphasis added.)

ployee. We answer this question in the affirmative. We conclude that: (1) the Hawaiʻi Legislature, pursuant to HRS § 89–14, has granted the HLRB exclusive original jurisdiction over controversies concerning public-sector prohibited practices; (2) Lee's public-sector hybrid action concerns alleged prohibited practices covered by HRS Chapter 89; (3) Lee's reliance on *Vaca v. Sipes*, 386 U.S. at 171, 87 S.Ct. 903, is misplaced; and (4) HRS § 89–14 does not violate Lee's constitutional rights by conferring exclusive original jurisdiction over Lee's public-sector hybrid action upon the HLRB. Accordingly, Lee's hybrid action was within the exclusive original jurisdiction of the HLRB, and the Circuit Court did not have jurisdiction, in the first instance, to entertain Lee's hybrid action.

### A.

■ It is "well-settled that an employee must exhaust any grievance procedures provided under a collective bargaining agreement before bringing a court action pursuant to the agreement." *Poe v. Hawaiʻi Labor Relations Bd.*, 105 Hawaiʻi 97, 101, 94 P.3d 652, 656 (2004) (hereinafter, *"Poe II"*) (internal quotation marks, ellipsis points, and citation omitted). In certain collective bargaining agreements, such as the one in Lee's case, the grievance procedures provide that the final grievance step, pursing binding arbitration, rests solely with the union. Thus, Lee could not exhaust the grievance procedures under the CBA for her wrongful-termination grievance without UPW's concurrence.

■ "However, when the union wrongfully refuses to pursue an individual grievance, the employee is not left without recourse." *Id.* at 102, 94 P.3d at 657. A "wrongfully discharged employee may bring an action against his [or her] employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent

breached its duty of fair representation in its handling of the employee's grievance." *Id.* (quoting *Vaca*, 386 U.S. at 186, 87 S.Ct. 903).

■ Such an action, known as a "hybrid action," "consists of two separate claims: (1) a claim against the employer alleging a breach of the collective bargaining agreement and (2) a claim against the union for breach of the duty of fair representation." *Id.* These two claims are "inextricably interdependent," in that for an employee alleging wrongful termination to prevail against either the employer or the union, the employee must not only show that his or her termination violated the collective bargaining agreement, but must also show that the union breached its duty of fair representation by not pursuing the employee's grievance. *Id.*

■ In order to establish the union's breach of its duty of fair representation, an employee alleging wrongful termination, such as Lee, must do more than show that he or she had been wrongfully terminated. *Vaca*, 386 U.S. at 193, 87 S.Ct. 903. A union breaches its duty of fair representation "only when [the] union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190, 87 S.Ct. 903; *see Poe II*, 105 Hawaiʻi at 104, 94 P.3d at 659 ("A union breaches its duty of good faith when its conduct towards a member of a collective bargaining unit is arbitrary, discriminatory, or in bad faith." (citing *Vaca*, 386 U.S. at 190, 87 S.Ct. 903, among other cases)). Thus, for Lee to prevail in her hybrid action against either the State or UPW, Lee must show both that (1) the State breached the CBA by wrongfully terminating her and (2) UPW breached its duty of fair representation by its arbitrary, discriminatory, or bad faith conduct in refusing to pursue her grievance. *See Poe II*, 105 Hawaiʻi at 101–04, 94 P.3d at 656–59.[3]

---

**3.** The proof required to prove a hybrid action balances the interests of the employee to remedy a wrongful action by the employer with the interests of the union in exercising its discretion as statutory bargaining representative and a party to the collective bargaining agreement. On the one hand, if the employer can raise the defense

of failure to exhaust contractual remedies, even where the employee is prevented from exhausting contractual remedies by the union's wrongful refusal to process the grievance, the employee in this circumstance would have no remedy for an employer's wrongful discharge in violation of the collective bargaining agreement. "To leave the

### B.

HRS Chapter 89, entitled "Collective Bargaining in Public Employment," was originally enacted in 1970. 1970 Haw. Sess. Laws Act 171, at 307–22. It grants public-sector employees the right to engage in collective bargaining with government employers. HRS § 89–13 (Supp.2010) identifies what constitutes prohibited practices on the part of public employers, public employees, and employee organizations (i.e., public employee unions). HRS § 89–14 (1993) provides in pertinent part, as it has at all times relevant to Lee's case, that the HLRB "shall have exclusive original jurisdiction" over any controversy concerning prohibited practices.

### 1.

Prior to 1982, HRS Chapter 89 did not have a specific provision granting the HLRB[4] exclusive original jurisdiction over controversies concerning prohibited practices. In 1981, the Intermediate Court of Appeals (ICA) in *Winslow v. State*, 2 Haw. App. 50, 56–57, 625 P.2d 1046, 1051–52 (1981), held that the HLRB and the circuit courts shared concurrent jurisdiction over prohibited practice complaints under the versions of HRS § 89–14 and HRS § 377–9 then in effect.[5]

This court's decision in *Winslow* prompted the Hawai'i Legislature in 1982 to amend

"HRS § 89–14 to legislatively overrule *Winslow* because [the Legislature] disagreed with the ICA's interpretation of HRS § 89–14 and HRS § 377–9." *Hawaii Gov't Employees Ass'n, AFSCME Local 152, AFL–CIO v. Lingle*, 124 Hawai'i 197, 203, 239 P.3d 1, 7 (2010) (hereinafter, "*HGEA*"). The 1982 Legislature amended HRS § 89–14 to provide the HLRB with "exclusive original jurisdiction" over controversies concerning prohibited practices by enacting Act 27, 1982 Haw. Sess. Laws Act 27, at 38 (Act 27). Act 27 amended HRS § 89–14 to read as follows (with the new material added by the amendment underscored):

"**§ 89–14 Prevention of prohibited practices.** Any controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377–9; *provided that the board shall have exclusive original jurisdiction over such a controversy except that nothing herein shall preclude (1) the institution of appropriate proceedings in circuit court pursuant to section 89–12(e) or (2) the judicial review of decisions or orders of the board in prohibited practice controversies in accordance with section 377–9 and chapter 91.* All references in section 377–9 to "board" shall include the [HLRB] and "labor organization" shall include employee organization."

---

employee remediless in such circumstance would ... be a great injustice." *Poe II*, 105 Hawai'i at 102, 94 P.3d at 657 (ellipsis points omitted) (quoting *Vaca*, 386 U.S. at 185–86, 87 S.Ct. 903). On the other hand,

[i]f the individual employee could compel arbitration of his [or her] grievance regardless of its merit, the settlement machinery provided by the [collective bargaining agreement] would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation.

*Id.* at 101, 94 P.3d at 656 (quoting *Vaca*, 386 U.S. at 191–92, 87 S.Ct. 903).

4. Prior to a 1985 statutory amendment, the HLRB was referred to as the Hawaii Public Employment Relations Board (HPERB). 1985 Haw. Sess. Laws Act 251, §§ 3–4 at 476. For simplicity, we will use "HLRB" to refer to both the HLRB and its predecessor, the HPERB.

5. The versions of HRS § 89–14 and HRS § 377–9(a) which this court construed in *Winslow* and quoted in the opinion provided as follows:

HRS § 89–14 Prevention of prohibited practices.
Any controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377–9. All references in section 377–9 to "board" shall include the [HLRB] and "labor organization" shall include employee organization.
HRS § 377–9 Prevention of unfair labor practices.
(a) Any controversy concerning unfair labor practices may be submitted to the [HLRB] in the manner and with the effect provided in this chapter, but nothing herein shall prevent the pursuit of relief in courts of competent jurisdiction.
*Winslow*, 2 Haw.App. at 56–57, 625 P.2d at 1051–52.

*See* 1982 Haw. Sess. Laws Act 27, at 38.[6]

The committee reports accompanying Act 27 leave no doubt that the Legislature's purpose in enacting Act 27 was to overrule *Winslow* and to make it clear that the circuit courts did not have concurrent jurisdiction to hear matters relating to public-sector prohibited practices, but that exclusive original jurisdiction over such matters was vested in the HLRB. *See* H. Stand. Comm. Rep. No. 134–82, in 1982 House Journal, at 943–44; H. Stand. Comm. Rep. No. 590–82, in 1982 House Journal, at 1164; S. Stand. Comm. Rep. No. 597–82, in 1982 Senate Journal, at 1202. After surveying these committee reports, the Hawai'i Supreme Court in *HGEA* concluded that "the legislature clearly intended for the HLRB to have exclusive original jurisdiction over prohibited practice complaints and the ICA's contrary interpretation in *Winslow* was incorrect." *HGEA*, 124 Hawai'i at 204, 239 P.3d at 8.

### 2.

HRS § 89–14 has not materially changed since its amendment by Act 27.[7] HRS § 89–14 provides the HLRB with exclusive original jurisdiction over controversies concerning prohibited practices on the part of public employers, public employees, and public employee unions. *HGEA*, 124 Hawai'i at 202–06, 239 P.3d at 6–10.[8] A party aggrieved by a decision of the HLRB can appeal the decision to the circuit court. *See* HRS § 89–14; *HGEA*, 124 Hawai'i at 206–07, 239 P.3d at 10–11; HRS § 377–9(f) (1993);[9] HRS § 91–14(a) (1993).[10] Thus, an employee can obtain judicial review of the HLRB's denial of the employee's prohibited practices complaint by appealing the HLRB's decision to the circuit court.

### C.

We conclude that Lee's hybrid-action complaint involves controversy concerning prohibited practices over which the HLRB has exclusive original jurisdiction pursuant to HRS § 89–14. HRS § 89–13 defines various actions which constitute a prohibited practice, including a public employer's willful violation of the terms of a collective bargaining agreement (HRS § 89–13(a)(8)) and a public employee union's willful refusal or failure to comply with any provision of HRS Chapter 89 (HRS § 89–13(b)(4)).[11]

Lee's complaint alleged that the State had breached the CBA and its duty of good faith and fair dealing and that UPW, as Lee's

6. The exception to the exclusive original jurisdiction of the HLRB in clause (1) for proceedings pursuant to HRS § 89–12(e) related to actions brought by public employers to enforce restrictions on participation in a strike by an employee or employee organization set forth in HRS § 89–12. *See* H. Stand. Comm. Rep. No. 134–82, in 1982 House Journal, at 944. Clause (2) was to make clear that the decisions of the HLRB would be subject to judicial review. *Id.; see HGEA*, 124 Hawai'i at 206–07, 239 P.3d at 10–11.

7. After Act 27, the only change to HRS § 89–14 has been a 1985 amendment to remove language referring to the HPERB because the HPERB became the HLRB in that year. *See* 1985 Haw. Sess. Laws Act 251, § 6 at 479–80; *HGEA*, 124 Hawai'i at 204 & n. 13, 239 P.3d at 8 & n. 13.

8. The supreme court's analysis in *HGEA* explains why the references in HRS § 89–14 to HRS § 377–9 do not detract from this conclusion. *HGEA*, 124 Hawai'i at 206–07, 209, 239 P.3d at 10–11, 13.

9. HRS § 377–9(f) provides, in relevant part:
 (f) Any person aggrieved by the decision or order of the [HLRB] may obtain a review thereof as provided in chapter 91 by instituting proceedings in the circuit court of the judicial circuit in which the person or any party resides or transacts business....

10. HRS § 91–14(a) provides, in relevant part:
 (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]

11. HRS § 89–13 provides, in relevant part:
 (a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:
 ....
 (8) Violate the terms of a collective bargaining agreement[.]
 ....
 (b) It shall be a prohibited practice for a public employee or for an employee organization or its designated agent wilfully to:
 ....
 (4) Refuse or fail to comply with any provision of this chapter[.]

exclusive representative under the CBA, had breached its duty of fair representation. Lee also alleged malicious conduct on the part of "the Defendant."

We conclude that Lee's complaint alleged a prohibited practice against the State pursuant to HRS § 89–13(a)(8). Lee does not dispute this proposition. We conclude that Lee's complaint against UPW for breach of its duty of fair representation also alleged a prohibited practice. As the exclusive bargaining representative for Lee's bargaining unit, UPW had an obligation pursuant to HRS § 89–8(a) (1993) to represent the interests of all employees in the bargaining unit. HRS § 89–8(a) provides that the union, as exclusive representative, "shall have the right to act for and negotiate agreements covering all employees in the unit and *shall be responsible for representing the interests of all such employees* without discrimination and without regard to employee organization membership." (Emphasis added). We agree with UPW that the breach of its duty of fair representation would violate HRS § 89–8(a) and would constitute a prohibited practice under HRS § 89–13(b)(4). Accordingly, Lee's complaint against the State for breach of the CBA and against UPW for breach of its duty of fair representation presents controversy concerning a prohibited practice over which the HLRB has exclusive original jurisdiction. *See HGEA*, 124 Hawai'i at 206, 239 P.3d at 10 (stating that "[a]lthough [the] complaint does not expressly use the words 'prohibited practice,' a prohibited practice can be logically inferred therefrom").

### 1.

We view the Hawai'i Supreme Court's decision in *Lepere v. United Public Workers, Local 646, AFL–CIO*, 77 Hawai'i 471, 887 P.2d 1029 (1995), as providing controlling authority that pursuant to HRS § 89–14, the Circuit Court did not have subject matter jurisdiction over Lee's complaint against UPW for breach of its duty of fair representation. In its published opinion, the supreme court noted that Lepere, a public employee, had filed a complaint against his union in circuit court which stemmed from the union's

"refusal to submit Lepere's grievance (against his employer) to arbitration." *Id.* at 472, 887 P.2d at 1030. The supreme court explained the procedural history of the case on appeal and summarized its holding as follows:

> On appeal, the Intermediate Court of Appeals (ICA) affirmed the circuit court's order dismissing Lepere's complaint for lack of subject matter jurisdiction. *Lepere v. United Public Workers, Local 646, AFL–CIO,* [9 Haw.App 649], 849 P.2d 82 (App.1993) (mem.). In addition, the ICA affirmed the circuit court's order granting in part and denying in part [the union's] motion for HRCP [ (Hawai'i Rules of Civil Procedure) ] Rule 11 sanctions. *Id.* Lepere petitioned this court for a writ of certiorari, which we granted on May 4, 1993.
>
> *Because we believe that the ICA properly concluded that the circuit court lacked subject matter jurisdiction to entertain Lepere's complaint, we affirm the ICA's holding on the motion to dismiss.* However, for the reasons set forth below, we reverse in part the ICA's holding with respect to the HRCP Rule 11 sanctions and the circuit court's calculation of attorney's fees.

*Id.* (emphasis added). Moreover, in its analysis of the HRCP Rule 11 sanctions, the supreme court noted that "[a]lthough [HRS] § 89–14 clearly precluded Lepere from bringing his prohibited practices complaint in the circuit court, Lepere adamantly pursued his claim." *Id.* at 474, 887 P.2d at 1032.

The supreme court's description of Lepere's complaint as stemming from the union's "refusal to submit Lepere's grievance (against his employer) to arbitration" indicates that the complaint asserted a claim against the union for breach of its duty of fair representation. The supreme court's reference to HRS § 89–14 as clearly precluding Lepere's complaint in circuit court also indicates that the supreme court viewed the HLRB as the appropriate forum for Lepere's complaint.

This court's unpublished memorandum opinion makes these propositions clear. This court stated that Lepere's complaint "alleges only a breach of a duty of fair representa-

tion." *Lepere v. United Public Workers, Local 646, AFL–CIO*, No. 15795, slip op. at 6, 9 Haw.App. 649, 849 P.2d 82 (Hawai'i App. Mar. 24, 1993) (mem.) (hereinafter, "ICA Memorandum Opinion"). The ICA Memorandum Opinion further states that (1) the circuit court granted the union's motion to dismiss, which argued that "since the dispute pertained to an alleged breach of the duty of fair representation, [HRS] § 89–14 (1992) gave primary and exclusive jurisdiction of the dispute to the [HLRB]"; and (2) "[i]n 1982, HRS § 89–14 was amended to make it clear that the HLRB 'shall have exclusive original jurisdiction' " over a controversy involving allegations of a breach of a duty of fair representation. *Id.* at 4, 7. Accordingly, in affirming this court's decision, the supreme court necessarily held that the circuit court did not have subject matter jurisdiction over Lepere's claim that the union had beached its duty of fair representation, which should have been brought before the HLRB.

Lee argues that the supreme court's decision in *Lepere* is not controlling because the supreme court did not decide the jurisdictional issue, but only decided the propriety of HRCP Rule 11 sanctions and the award of attorney's fees. We disagree. In its published opinion, the supreme court agreed with this court's conclusion that the circuit court lacked subject matter jurisdiction over Lepere's complaint. *Lepere*, 77 Hawai'i at 472, 887 P.2d at 1030. The supreme court specifically stated, "we … affirm the ICA's holding that affirmed the circuit court's order granting [the union's] motion to dismiss[.]" *Id.* at 475, 887 P.2d at 1033. Thus, the supreme court did decide the jurisdictional question, albeit without extended discussion. We are bound by the supreme court's decision.

We also reject Lee's suggestion that because the ICA Memorandum Opinion was issued at a time when such decisions were not citable, we cannot tell whether the supreme court's decision in *Lepere* is applicable to Lee's case. As noted, the supreme court's opinion indicated that the claim Lepere asserted was for breach of the union's duty of fair representation and that the HLRB, and not the circuit court, was the appropriate forum for Lepere's complaint based on HRS § 89–14. In any event, we have not attempted to cite the ICA Memorandum Opinion as precedent or for persuasive value, but have only referred to the ICA Memorandum Opinion to clarify what the supreme court meant in its published decision when it affirmed the ICA's jurisdictional holding.

2.

Federal courts have construed provisions similar to HRS § 89–8(a), which establish a union as the exclusive bargaining representative of all employees in a bargaining unit, as imposing a statutory duty of fair representation. *See Vaca*, 386 U.S. at 176–78, 87 S.Ct. 903. We also note that the HLRB has concluded that a union's breach of its duty of fair representation violates its responsibilities under HRS § 89–8(a) and constitutes a prohibited practice subject to the HLRB's jurisdiction. *See, e.g., In the Matter of Lewis W. Poe*, No. CU–03–214, 2004 WL 5656310, at *7 (Haw. Labor Relations Bd. Feb. 19, 2004) ("The union's breach of its duty of fair representation is a prohibited practice in violation of HRS § 89–13(b)(4) and HRS § 89–8(a), when the union's conduct is arbitrary, discriminatory or in bad faith."); *In the Matter of Keith J. Kohl*, Nos. CE–13–385 & CU–13–140, 2002 WL 34404632, at *6 (Haw. Labor Relations Bd. Mar. 8, 2002) (same). These decisions by the federal courts and the HLRB reinforce our view that Lee's complaint against the UPW for breach of its duty of fair representation alleged a prohibited practice that was within the exclusive original jurisdiction of the HLRB.

Because the allegations in Lee's complaint regarding (1) the State's breach of the CBA and (2) UPW's breach of its duty of fair representation both involve a "controversy concerning prohibited practices," we conclude that Lee's public-sector hybrid action is governed by HRS § 89–14. Under HRS § 89–14, the HLRB has exclusive original jurisdiction over Lee's hybrid action, and the Circuit Court properly dismissed Lee's complaint for lack of subject matter jurisdiction.

D.

Lee relies on the United States Supreme Court decision in *Vaca v. Sipes*, 386 U.S. 171,

87 S.Ct. 903, 17 L.Ed.2d 842, in arguing that the Circuit Court has original jurisdiction over her hybrid action. Lee's reliance on *Vaca* is misplaced.

As explained in greater detail below, *Vaca* is plainly distinguishable from and inapposite to Lee's case. Most significantly, *Vaca* involved a lawsuit brought pursuant to federal labor laws by a private-sector employee against his union for breach of the union's duty of fair representation. In contrast, Lee was a public-sector employee. The federal labor laws under which *Vaca* was decided do not apply to public-sector employers, employees, and unions, such as the State, Lee, and UPW. In addition, the rationales cited by the Supreme Court in support of its jurisdictional decision do not apply to Lee's hybrid action. Therefore, *Vaca* does not support Lee's jurisdictional claim.

In *Vaca*, the plaintiff was discharged by his private employer on the ground that his poor health rendered him unfit to perform his job. *Id.* at 175, 87 S.Ct. 903. Although the plaintiff's union filed a grievance against the plaintiff's employer on his behalf, the union eventually declined to pursue the grievance to arbitration, citing insufficient medical evidence. *Id.* With his contractual remedies stalled, the plaintiff brought suit in state court against the union. *Id.* at 173, 87 S.Ct. 903. The complaint alleged that the plaintiff had been wrongfully discharged by his employer in violation of the collective bargaining agreement and that the union had breached its duty of fair representation in failing to pursue his grievance to arbitration. *Id.*

The union argued that the state court did not have jurisdiction over the plaintiff's complaint because the complaint essentially alleged an unfair labor practice under the National Labor Relations Act (N.L.R.A.) that was within the exclusive jurisdiction of the National Labor Relations Board (NLRB). *Id.* The Supreme Court held that although the state court had jurisdiction over the plaintiff's complaint, federal labor law governed, and the governing federal standards had not been applied. *Id.*

With respect to the jurisdictional issue, the Supreme Court discussed several reasons for its conclusion that the NLRB did not have exclusive jurisdiction over claims for breach of the union's duty of fair representation. *Id.* at 179–88, 87 S.Ct. 903. Among other things, the Court noted that suits alleging the breach of such duty "remained judicially cognizable long after the NLRB was given unfair labor practice jurisdiction over union activities by the L.M.R.A. [(Labor Management Relations Act)]" and that "it can be doubted whether" the NLRB would have substantially greater expertise than the courts in deciding fair representation duty claims. *Id.* at 181, 87 S.Ct. 903. Given these and other considerations, the Court determined that it could not fairly be inferred that Congress intended to oust the courts of jurisdiction over fair representation duty claims and to give exclusive jurisdiction to the NLRB. *Id.* at 179–83, 87 S.Ct. 903.

In addition, the Court noted that the L.M.R.A authorizes an employee to directly file an action in court against his or her employer for breach of a collective bargaining agreement, regardless of whether such breach was also an unfair labor practice within the jurisdiction of the NLRB. *Id.* at 183–84, 87 S.Ct. 903. The question of whether a union has breached its duty of fair representation will often be a critical issue in such a suit by an employee against his or her employer. *Id.* at 183, 87 S.Ct. 903. As a result, the courts will already be compelled to determine whether the union has breached its duty of fair representation in the context of many suits brought by employees charging their employer with breach of the collective bargaining agreement. *Id.* at 187, 87 S.Ct. 903.

As noted, there are significant differences between *Vaca* and Lee's case which render *Vaca* inapposite. *Vaca* involved a lawsuit by a private-sector employee against his private-sector union, and the Supreme Court relied upon the federal N.L.R.A. and L.M.R.A. in concluding that the NLRB did not have exclusive jurisdiction over the private employee's lawsuit. However, the N.L.R.A. and the L.M.R.A. specifically exempt public-sector employers as well as public-sector employees and their unions from the scope of their coverage. *See* 29 U.S.C. §§ 142, 152; *Ayres*

*v. Int'l Bhd. of Elec. Workers,* 666 F.2d 441, 442–44 (9th Cir.1982).[12] Thus, the federal labor laws which governed the Supreme Court's jurisdictional decision in *Vaca* do not apply to Lee's public-sector hybrid action.

This point is clearly made by the federal Ninth Circuit Court of Appeals decision in *Ayres,* which was rendered after *Vaca.* In *Ayres,* a public employee filed a hybrid action in federal court against his employer, a political subdivision of the State of Washington, and his union under section 301(a) of the L.M.R.A., 29 U.S.C. § 185(a). *Ayres,* 666 F.2d at 441. The Ninth Circuit affirmed the trial court's dismissal of the action for lack of subject matter jurisdiction. *Id.* at 441–42. The Ninth Circuit held that states and their political subdivisions are not employers for purposes of section 301(a) of the L.M.R.A. and that section 301(a) "does not grant this court jurisdiction over the claims of an individual employed by a political subdivision of a state." *Id.* at 441–42, 444.

In addition, rationales cited by the Supreme Court in support of its decision in *Vaca* do not apply to Lee's public-sector hybrid action. In *Vaca,* the Court concluded that it could not fairly infer that Congress intended to oust the courts of jurisdiction over fair representation duty claims in favor of exclusive jurisdiction by the NLRB. Here, there is no uncertainty over the Hawai'i Legislature's intent. In amending HRS § 89–14 by enacting Act 27 in 1982, the Legislature clearly expressed its intent to give the HLRB exclusive original jurisdiction over controversies concerning public-sector prohibited practices such as Lee's hybrid action. Moreover, whereas the L.M.R.A. authorizes a private-sector employee to directly file a prohibited practice complaint in court against an employer for violating the collective bar-

gaining agreement, HRS § 89–14 grants exclusive original jurisdiction over public-sector prohibited practice complaints to the HLRB. Thus unlike in *Vaca,* where the federal labor laws made restricting jurisdiction over fair representation duty claims to the NLRB impractical, there is no similar impracticality in restricting public-sector hybrid actions to the HLRB under Hawai'i's labor laws.

For all these reasons, we conclude that *Vaca* does not support Lee's jurisdictional argument.

## E.

Lee argues that if HRS § 89–14 confers upon the HLRB exclusive original jurisdiction over public-sector hybrid claims, then the statute violates her constitutional rights (1) to petition the government for redress of grievances and of access to the courts, (2) to due process, and (3) to equal protection. These arguments are without merit.

■ "We review questions of constitutional law de *novo,* under the right/wrong standard." *United Public Workers, AFSCME, Local 646, AFL–CIO v. Yogi,* 101 Hawai'i 46, 49, 62 P.3d 189, 192 (2002). "Every enactment of the [L]egislature carries a presumption of constitutionality and should be upheld by the courts unless it has been shown to be, beyond all reasonable doubt, in violation of the constitution." *City and County of Honolulu v. Ariyoshi,* 67 Haw. 412, 419, 689 P.2d 757, 763 (1984).

## 1.

■ Lee does not cite any pertinent authority in support of her content ion that HRS § 89–14, by vesting the HLRB with exclusive original jurisdiction over her hybrid action, violates her First Amendment right to

---

12. The N.L.R.A. and the L.M.R.A. exclude the United States as well as states and their political subdivisions from the definition of "employer." Under the N.L.R.A., "[t]he term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States ... or any State or political subdivision thereof...." 29 U.S.C. § 152(2). In addition, the term "employee" is defined so that it does "not include ... any individual employed ... by any other person who is not an employer as herein defined," 29

U.S.C. § 152(3), and the term "labor organization" is defined, in part, as "any organization ... in which *employees* participate and which exists for the purpose ... of dealing with *employers* concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5) (emphases added). These definitions, which also apply to the L.M.R.A. as a whole, *see* 29 U.S.C. § 142(3), establish that the N.L.R.A. and the L.M.R.A. do not apply to State of Hawai'i public-sector employers, employees, or unions.

petition the government for redress of grievances and of access to the courts. The right of access to the courts is one aspect of the right to petition the government fox redress. *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The right of access to the courts is not absolute and unlimited. "All that is required is a reasonable right of access—a reasonable opportunity to be heard." *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 554 (3rd Cir.1985).

 The administrative dispute resolution process set forth in HRS Chapter 89 did not preclude Lee from seeking redress from the courts. As previously stated, Lee could appeal an unfavorable decision issued by the HLRB to the circuit court. *See* HRS § 89–14; HRS § 91–14. Accordingly, Lee was not deprived of reasonable access to the courts. A party who has the opportunity to present his or her case at an administrative hearing and then appeal the decision of the administrative agency to a court is not deprived of the right to petition the government and of access to the courts. *See Rivera v. Holder,* 666 F.Supp.2d 82, 95 n. 11 (D.D.C. 2009).

If Lee's First Amendment claim were valid, every statute enacted by the Legislature that limits judicial review to appeals of decisions from administrative agencies could be found unconstitutional. Lee provides no support for a claim that would have such drastic consequences. We reject her claim that HRS § 89–14 violates her right to petition the government to redress grievances and of access to the courts.

### 2.

HRS § 89–14 does not violate Lee's right to procedural or substantive due process. With respect to procedural due process, the Hawai'i Supreme Court has stated:

> Due process is not a fixed concept requiring a specific procedural course in every situation. Rather, due process is flexible and calls for such procedural protections as the particular situation demands. The basic elements of procedural due process of law require notice and an

opportunity to be heard at a meaningful time and in a meaningful manner.

*State v. Adam,* 97 Hawai'i 475, 482, 40 P.3d 877, 884 (2002) (internal quotation marks and citation omitted).

 It is well-recognized that a person's procedural due process rights are not violated when that person may participate fully in an administrative agency proceeding and then seek judicial review of that agency decision. *See Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 483–84, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Here, HRS Chapter 89 affords Lee the opportunity to present her hybrid action to the HLRB in an administrative hearing, and it grants the HLRB the power to conduct proceedings on complaints of prohibited practices, administer oaths, take testimony and receive evidence, and compel the attendance of witnesses and production of documents. *See* HRS § 89–5(i)(4) and (5) (Supp.2010). In addition, the decisions of the HLRB require a majority vote of its three members, and one member each must be representative of management, labor, and the public. HRS § 89–5(b) and (e) (Supp.2010). Finally, any person aggrieved by a decision of the HLRB can appeal that decision to the circuit court. *See* HRS § 89–14; HRS § 91–14. These procedures satisfy the requirements for procedural due process.

 Granting the HLRB exclusive original jurisdiction over Lee's hybrid action also does not violate Lee's right to substantive due process. "Substantive due process has been defined as that which protects those fundamental rights and liberties which are implicit in the concept of ordered liberty." *Ek v. Boggs,* 102 Hawai'i 289, 297, 75 P.3d 1180, 1188 (2003) (internal quotation marks, ellipsis points, and citation omitted). Lee fails to demonstrate that requiring her to present her hybrid action to the HLRB for decision before she can obtain access to the courts by means of an appeal deprives her of a fundamental right. In a substantive due process analysis, if a fundamental right is not implicated, the challenged statute is subject only to a rational basis test. *See Doe v. Doe,* 116 Hawai'i 323, 333, 172 P.3d 1067, 1077 (2007). As discussed below, HRS § 89–14 passes a rational basis test.

### 3.

We reject Lee's claim that HRS § 89–14 violates her right to equal protection. HRS § 89–14's grant of exclusive original jurisdiction over Lee's hybrid action to the HLRB does not deprive Lee of a fundamental right. In addition, Lee does not specifically argue that public employees are a suspect class, and courts have held that the distinction between private and public employees does not involve a suspect or quasi-suspect classification. *See Abril v. Virginia,* 145 F.3d 182, 188 (4th Cir.1998); *Silva v. Universidad de Puerto Rico,* 817 F.Supp. 1000, 1007 (D.P.R. 1993); *State Dep't of Human Res., Welfare Div. v. Fowler,* 109 Nev. 782, 858 P.2d 375, 378 (1993). Because no fundamental rights or suspect classifications are implicated, we apply the rational basis standard of review to Lee's equal protection claim. *Hawaii Insurers Council v. Lingle,* 120 Hawai'i 51, 71, 201 P.3d 564, 584 (2008). Under the rational basis standard of review,

> a party challenging the constitutionality of a statutory classification on equal protection grounds has the burden of showing, with convincing clarity[,] that the classification is not rationally related to the statutory purpose, or that the challenged classification does not rest upon some ground of difference having a fair and substantial relation to the object of the legislation, and is therefore arbitrary and capricious.

*Washington v. Fireman's Fund Ins. Companies,* 68 Haw. 192, 199, 708 P.2d 129, 134 (1985) (internal quotation marks and citations omitted).

Here, HRS § 89–14 clearly passes constitutional muster under the rational basis test. HRS Chapter 89 was enacted for a legitimate governmental purpose. The Legislature declared that "it is the public policy of the State to promote harmonious and co-operative relations between government and its employees and to protect the public by assuring effective and orderly operations of government." HRS § 89–1(b) (Supp.2010). To effectuate this policy, the Legislature created the HLRB to administer the provisions of HRS Chapter 89. It also provided that the HLRB shall administer the provisions of HRS Chapter 377, relating to private sector collective bargaining. *See* HRS § 377–2 (1993). The Legislature's clear purpose in creating the HLRB was to establish a board with specialized expertise over collective bargaining matters.

Granting the HLRB exclusive original jurisdiction over public-sector prohibited practice controversies is rationally related to the public policy of HRS Chapter 89. The Legislature could reasonably have believed that it would be more effective in promoting harmonious governmental employer-employee relations and in assuring the effective operation of government for these controversies to be decided in the first instance by the HLRB rather than by the courts. In the context of collective bargaining, there are fundamental distinctions between the private and public sectors. *See Abood v. Detroit Bd. of Ed.,* 431 U.S. 209, 227–29, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). In light of these distinctions, the Legislature could rationally have decided that the HLRB's original jurisdiction should be exclusive for public-sector prohibited practice controversies but should only be concurrent for private-sector unfair labor practice controversies. Lee has not demonstrated, and we cannot say, that the Legislature was arbitrary and capricious in conferring the HLRB with more comprehensive original jurisdiction over public-sector than private-sector labor controversies. *See Washington,* 68 Haw. at 199, 708 P.2d at 134 ("Equal protection does not mandate that all laws apply with universality to all persons[.]" (internal quotation marks, brackets, and citation omitted)); *cf. City of New York v. De Lury,* 23 N.Y.2d 175, 295 N.Y.S.2d 901, 243 N.E.2d 128, 133–34 (1968) (holding that "legislative differentiation between public and private employees, insofar as restrictions on their right to strike and to jury trials are concerned, is reasonable[ ]" and does not violate equal protection).

### II.

Lee argues that the Circuit Court erred in reducing the award of attorneys' fees to half the requested amount. We review the Circuit Court's award of attorneys' fees for abuse of discretion. *Kamaka v. Goodsill Anderson Quinn & Stifel,* 117 Ha-

wai'i 92, 105, 176 P.3d 91, 104 (2008). We conclude that the Circuit Court did not abuse its discretion in limiting the amount of attorney's fees awarded to Lee.

■ The Circuit Court granted UPW's motion to set aside the entry of default against UPW "on the condition that UPW pay necessary and reasonable fees and costs to [Lee] for the time [Lee] spent to prepare for and attend her motion for entry of default judgment as against UPW." The record indicates that Lee's counsel expended 7.4 hours (valued at $1,480) in connection with the motion for entry of default judgment that Lee filed against both the State and UPW. Lee argues that "[t]he same services were expended and incurred in preparing, filing, and appearing at the hearing [on the motion][,]" that the same proof was required against both UPW and the State, and that the State was mentioned "at most[ ] five times" in the pleading.

However, Lee's motion for entry of default judgment was filed against both UPW and the State. Lee stipulated with the State that the entry of default against the State would be set aside without requiring the State to pay any attorney's fees. Under these circumstances, we cannot say that the Circuit Court abused its discretion in limiting its award of attorney's fees against UPW and in favor of Lee to $740, an amount reflecting one-half of the time that Lee's attorney spent on the motion for entry of default judgment that Lee filed against both the State and UPW.

## CONCLUSION

We hold that the Circuit Court properly dismissed Lee's complaint against UPW and the State for lack of jurisdiction. We therefore affirm the Circuit Court's January 24, 2007, Judgment. We also hold that the Circuit Court did not abuse its discretion in limiting its award of attorney's fees against UPW to $740. We therefore affirm (1) the Circuit Court's November 15, 2006, order awarding Lee attorney's fees and costs against UPW; and (2) its January 17, 2007, order denying Lee's motion to alter, amend, or revise the award of attorneys' fees.